# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 14-422V
Filed: March 6, 2019
PUBLISHED

| | |
|---|---|
| TAMMY SCHETTL, <br><br> Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Ruling on Set-Off of Petitioner's Settlement with Vaccine Administrator; Vaccine Act § 15(a); Vaccine Act § 15(g); Release of All Claims; "Under an Insurance Policy" |

*Richard Gage*, Richard Gage, PC, Cheyenne, WY, for petitioner.
*Justine Walters*, U.S. Department of Justice, Washington, DC, for respondent.

**RULING ON SET-OFF**[1]

**Dorsey**, Chief Special Master:

On May 15, 2014, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, et seq.[2] (the "Vaccine Act"), alleging that she suffered from Complex Regional Pain Syndrome ("CRPS") caused by her October 4, 2011 influenza ("flu") vaccination. Amended Petition at 1-2 (ECF No. 29). Respondent conceded that petitioner is entitled to compensation, and a Ruling on Entitlement issued on August 7, 2018. Because the parties had been unsuccessful in resolving pain and suffering damages, a damages

---

[1] Because this Ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

hearing was held on August 9 and 10, 2018.  A ruling on pain and suffering issued on January 22, 2019.  Petitioner's award for actual and projected unreimbursable expenses remains pending.

During the pendency of her vaccine case in this Court, petitioner executed a "Release of All Claims" with the employer of the vaccine administrator and its insurer in consideration of $58,270.07.  At issue here is whether petitioner's vaccine award should be offset by the settlement money paid by the vaccine administrator's insurance policy.  For the reasons discussed below, the undersigned finds that the Vaccine Act is a secondary payer as to the insurance policy and that petitioner's award of compensation is subject to a set-off.

## I.  Procedural and Factual History

The procedural history of this case was fully set forth in the Ruling on Pain and Suffering and is incorporated herein by reference.  See Ruling dated Jan. 22, 2019 (ECF No. 145) at 2-3.  A brief history relevant to the release and set-off issue is set forth here.

Tammy Schettl filed her petition on May 15, 2014, arising out of a flu vaccination she received on October 4, 2011.  Amended Petition at 1-2; Transcript ("Tr.") 121.  Ms. Schettl's vaccine was administered by an employee or agent of Olmsted County Public Health Services ("Olmsted County").  Petition at 1; Tr. 9.[3]  After her vaccine injury, Ms. Schettl contacted Olmsted County Human Resources ("HR") to notify them of her injury and ask for help paying her medical bills.  Tr. 122, 125-26.

Ms. Schettl subsequently provided Olmsted County's HR department, and its insurance company, CNA/Columbia Casualty Company,[4] with medical records and bills.  Tr. 122; Pet. Ex. 65 at 1.  Petitioner would then receive reimbursement checks from CNA to cover her medical care and medications.  Tr. 122, 125-27.  Ms. Schettl testified that she received several reimbursement checks, but that approximately six months after her vaccination, CNA stopped reimbursing her.  Tr. 128.  Ms. Schettl was notified by a CNA claims specialist, Terrence Loeber, that CNA would no longer pay her copays.  Tr. 129; Pet. Ex. 19 at 1.  After additional discussions and negotiations, Mr. Loeber made an offer of $58,270.07, to which Ms. Schettl agreed.  Tr. 130-31[5]; Pet. Ex. 19 at 4.

---

[3] Although Ms. Schettl refers to the Olmsted County "Health Department" or "Public Health Department" in her petition and testimony, "Olmsted County Public Health Services" appears to be the correct title.  See Petitioner's Exhibit ("Pet. Ex.") 19 at 1; Pet. Ex. 65 at 1.

[4] Columbia Casualty Company is also referred to throughout the record as "CNA," a registered service mark which Columbia Casualty Company is authorized to use.  See Pet. Ex. 62 at 1-2.

[5] Ms. Schettl testified that "CNA and Olmsted County are all the same thing because they're self-insured."  Tr. 131.  Other than her testimony, however, the record does not support this assertion.  Olmsted County was a named insured under the terms of a "Healthcare Liability Policy."  Pet. Ex. 65 at 1-2.  Olmsted paid premiums and CNA/Columbia Casualty Company agreed to "pay all amounts up to our limit of insurance which the insured becomes legally obligated to pay . . . as a result of a 'claim' . . . arising from an act, error or omission in the

2

A settlement agreement titled "Release of All Claims" was executed by petitioner on September 21, 2015.[6] Pet. Ex. 19 at 4. The document states that Ms. Schettl released "any and all claims, actions, causes of action, . . . expenses, . . . [or] costs . . . growing out of, any and all known and unknown personal injuries and property damage resulting or to result from accident that occurred on or about the October 4, 2011, at or near Rochester, Olmstead County, Minnesota." Id. at 2. Ms. Schettl confirmed that the injury referenced in the document is her injury arising from the vaccine administered on October 4, 2011. Tr. 121. The release specifically states that it discharges "Olmstead County Public Health Services, Columbia Casualty Company and any CNA Entity," as well as any employees or agents of these stated parties, from any and all claims as a result of what occurred on October 4, 2011. Pet. Ex. 19 at 2.

Ms. Schettl was paid $58,270.07 pursuant to the settlement agreement. Pet. Ex. 19 at 1. In the cover letter that accompanied the release, Mr. Loeber stated that CNA "previously paid prescriptions, medical and other expenses of $6,520.07, leaving a balance of $51,750.00." Id. At the damages hearing in this case, Ms. Schettl initially testified that the $58,270.07 was for medical expenses, prescriptions, and related travel expenses. Tr. 155-56. However, she later testified that she was not sure whether the $6,520.07 amount was for medical expenses. Tr. 162. Ms. Schettl testified that pain and suffering was never mentioned during her negotiations with Mr. Loeber. Tr. 156. She also testified that she received the settlement money in exchange for not pursuing a legal claim against them. Tr. 162.

The insurance policy in question was issued by Columbia Casualty Company on March 30, 2011. Pet. Ex. 65 at 1. The named insured was Olmsted County Public Health Services. Id. The policy covers professional liability and commercial general liability claims. Id. at 1, 8-12. The settlement check made payable to Ms. Schettl was issued by CNA. Tr. 127, 151. The insurance policy provides coverage for a "'claim' or 'circumstance' arising from an act, error or omission in the rendering of 'professional services' . . . ." Pet. Ex. 65 at 8. Damages arising out of such a claim may include "settlements an Insured is legally obligated to pay because of a covered 'claim' or 'circumstance' . . . ." Id. at 11.

## II.   The Parties' Contentions

Ms. Schettl characterizes her settlement money as money "provided in return for an agreement by Ms. Schettl to not pursue a civil action against Olmstead County Public Health

---

rendering of 'professional services' . . . ." Id. at 1, 8. An endorsement to the policy provided that a deductible of $10,000 applied to each claim under the policy, but there is no language referencing any self-insured retention, provision, or endorsement. See id. at 15. "Under an insurance policy," the deductible is that "portion of the loss to be borne by the insured before the insurer becomes liable for payment." Deductible, Black's Law Dictionary (10th ed. 2014). In contrast, self-insurance is a "plan under which a business maintains its own special fund to cover any loss." Self-Insurance, Black's Law Dictionary.

[6] The year (2015) is not reflected in the document itself, but it can be inferred based on the cover letter signed by Terrence Loeber and dated September 18, 2015. Pet. Ex. 19 at 1. Moreover, Ms. Schettl testified that she executed the document on September 21, 2015. Tr. 154.

3

Services." Pet. Memorandum ("Memo") dated July 10, 2018 (ECF No. 108) at 1.  She argues that a set-off is not appropriate for two reasons.  First, she asserts that her settlement money "was a general payment in settlement of a potential civil claim" and not for any "item or service" under § 15(g).  Id. at 3-4.  Second, she argues that a set-off is not proper because the settlement money she received did not come from any of the enumerated sources listed in § 15(g).  Id. at 3.  She notes that § 15(g) specifically applies to funds paid "under any State compensation program, under an insurance policy, or under any Federal or State health benefits program . . . ."  See id. (quoting § 15(g)).

Respondent counters petitioner's arguments by asserting that a set-off is appropriate because § 15(g) provides that petitioner "may not be compensated for reimbursable or other damages that have already been provided to her by the vaccine administrator."  Respondent's ("Resp.") Response dated July 10, 2018 (ECF No. 105) at 5.  Respondent also emphasizes that the payment was made under an insurance policy, which is an enumerated source under the Vaccine Act.  Id.

### III.   Analysis

This case presents the novel question of whether settlement proceeds paid to petitioner for a vaccine injury under the vaccine administrator's liability insurance policy may offset the petitioner's award of compensation under the Vaccine Act.[7]

Pursuant to §§ 15(a)(1)-(4) of the Act, a petitioner[8] entitled to an award of compensation may recover past and future unreimbursed expenses for "diagnosis and medical and other remedial care determined to be reasonably necessary"[9] because of the vaccine injury, and for "actual and projected pain and suffering and emotional distress . . . not to exceed $250,000." § 15(a).  Payment of these elements of compensation is limited, however, by § 15(g) of the Vaccine Act, which provides that

---

[7] Respondent did not assert a jurisdictional argument based on § 11.  Ms. Schettl's petition was filed on May 15, 2014, and she signed the settlement agreement on September 21, 2015.  Therefore, Ms. Schettl did not have a civil action for her vaccine injury pending at the time she filed her petition in this Court.  Moreover, she had not "previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death."  See § 11; Resp. Response at 3 n.2.  There is no evidence that petitioner filed a civil action at any time.

[8] A petitioner may also recover for lost wages, and in the case of death, the estate of the petitioner may receive an award of $250,000.  The death award is not relevant here, and Ms. Schettl is not seeking lost wages.  See Pet. Status Report dated Aug. 6, 2018 (ECF No. 115).

[9] The Vaccine Act also provides for payment for "rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotion or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determine to be reasonably necessary." § 15(a)(1).

4

> Payment of compensation under the Program shall not be made for any item or service to the extent that payment has been made, or can reasonably be expected to be made, with respect to such item or service (1) under any State Compensation program, under an insurance policy, or under any Federal or State health benefits program . . . , or (2) by an entity which provides health services on a prepaid basis.

§ 15(g). Thus, compensation awarded pursuant to § 15(a) is subject to the constraints of § 15(g), which establishes that the Program is a secondary payer for the enumerated sources of funds, with the exception of Medicaid. See id.

"It is a well-settled principle of statutory interpretation that '[w]hen . . . the terms of a statute [are] unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.'" Helman v. Sec'y of Health & Human Servs., No. 10-813V, 2014 WL 3589564, at *2 (Fed. Cl. Spec. Mstr. June 24, 2014) (quoting Glaxo Operations UK Ltd. v. Quigg, 894 F.2d 392, 395 (Fed. Cir. 1990)). A judicial officer should not "add words to a statute," but should instead "interpret[] the statute as it was enacted." Id. (quoting Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029, 1034 (Fed. Cir. 1991)).

**a. "Item or Service"**

Petitioner's first argument against paying a set-off is that her payment was "in settlement of a potential civil claim" and not for any "item or service" under § 15(g).

The "Release of All Claims" was executed by Ms. Schettl "in consideration" of $58,270.07, to release and "forever discharge[]" the named parties from any "expenses, . . . costs, whatsoever, . . . growing out of, any and all known and unknown personal injuries . . . ." Pet. Ex. 19 at 2. The word "release" is defined as "the act of giving up a right or claim to the person against whom it could have been enforced. Release, Black's Law Dictionary. And the word "consideration" in this context is defined as "something of value" that is "necessary for an agreement to be enforceable." Consideration, Black's Law Dictionary. Thus, in the general sense, petitioner is correct. By signing this agreement, she has given up her right to sue. However, the Release references the expenses and costs associated with her personal injury – her vaccine injury. And the cover letter by Mr. Loeber, the CNA Claims specialist, makes it clear that some of the settlement money was intended to cover medical expenses.

A review of the Act and its legislative history reveals that Congress intended the Program to be a secondary payor as to public or private sources. "Payment of compensation is not to be made for items or services for which payment has been made or can be expected to be made by other public or private entities. Thus, if an insurance program or a health maintenance organization pays or is obligated to pay for health care services, the Program is not to pay for these same services." H.R. Rep. No. 99-908, at 22 (1986), reprinted in 1986 U.S.C.C.A.N. 6344, 6363.

The Act provides for payment of medical expenses, prescriptions, and related travel expenses. § 15(a)(1)(A). These are the same expenses for which Ms. Schettl has received payment as part of her settlement. The undersigned agrees with respondent that the Act

5

precludes petitioner from receiving "dual compensation . . . for the same vaccine injury." Resp. Response at 4.

### b. "Under an Insurance Policy"

Petitioner's second argument is that Olmsted County made the payment at issue, and because it is not a program, policy, or entity identified in § 15(g), her settlement proceeds should not offset her Program award. However, § 15(g) specifically provides that the Program is a secondary payer as to payments made "under an insurance policy." § 15(g). The statute "does not limit the type of insurance payment requiring an offset to health insurance policies." Helman, 2014 WL 3589564, at *2. The fact that the insurance policy here is a professional liability policy does not change the language and intent of the Vaccine Act, which clearly intended the Program to be a secondary payor to an insurance policy.

Ms. Schettl received $58,270.07 in settlement proceeds upon executing an agreement to release all claims against Olmsted County, Columbia Casualty Company, and any CNA entity. The settlement agreement was negotiated and processed by Mr. Loeber, a claims specialist for CNA. The settlement check was paid by CNA and sent to petitioner from a CNA claims specialist. Olmsted County Public Health Services was the named insured for an insurance policy issued by Columbia Casualty Company. The insurance policy provided coverage for a "'claim' or 'circumstance' arising from an act, error or omission in the rendering of 'professional services' . . . ." Pet. Ex. 65 at 8. Damages arising out of such a claim include "settlements an Insured is legally obligated to pay because of a covered 'claim' or 'circumstance' . . . ." Id. at 11. This evidence establishes that payments were made "under an insurance policy" as contemplated in Vaccine Act § 15(g).

Therefore, the undersigned finds that because petitioner received a payment of $58,270.07 under an insurance policy, § 15(g) of the Vaccine Act is applicable and requires a set-off.

### c. Application

In his letter accompanying the "Release of All Claims," Mr. Loeber stated that CNA had paid actual prescriptions and medical expenses in the amount of $6,520.07. Pet. Ex. 19 at 1. Since Ms. Schettl has already been reimbursed for these expenses, they do not meet the Vaccine Act's definition of "unreimbursable" expenses. However, it is not clear whether she has also submitted those same expenses in this case. If Ms. Schettl can demonstrate that she did not submit the invoices previously reimbursed by CNA in the amount of $6,520.07 in her present Vaccine Act case, then her Program award for actual and projected unreimbursed expenses will be offset in the amount of $51,750.00. If she is unable to provide proof, the entire $58,270.07 may be subject to a set-off.

## VI. Conclusion

The Vaccine Act is a secondary payer as to the insurance policy that paid petitioner's claim in the amount of $58,270.07. Petitioner's award of compensation shall be reduced in accordance with this Ruling.

Petitioner shall file all receipts, invoices, or other evidence of prescription costs or medical expenses that she previously provided to Olmsted County HR and/or CNA, arising out of her vaccine injury. Petitioner shall also file an affidavit explaining the evidence and indicating whether she has submitted those same expenses in this case. If petitioner does not have receipts, invoices, or other evidence responsive to this order, she shall file an affidavit stating such. Petitioner shall file the evidence and her supporting affidavit <u>no later than Friday, April 5, 2019</u>.

The parties have been ordered to file a joint status report by Friday, March 29, 2019, (1) converting the award of future pain and suffering to its net present value and (2) reporting on all outstanding items of damages that remain unresolved. Once these issues are resolved, a damages decision will issue.

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master