# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: March 25, 2020

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| TAMMY SCHETTL, | * | PUBLISHED |
| | * | |
| Petitioner, | * | Case No. 14-422V |
| | * | |
| v. | * | Special Master Nora Beth Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Interim Damages; Pain and Suffering; |
| AND HUMAN SERVICES, | * | Past Unreimbursable Medical |
| | * | Expenses; Influenza ("Flu") Vaccine; |
| Respondent. | * | Complex Regional Pain Syndrome |
| | * | ("CRPS"). |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Richard Gage, Richard Gage, P.C., Cheyenne, WY, for petitioner.
Colleen Hartley, U.S. Department of Justice, Washington, DC, for respondent.

**DECISION AWARDING INTERIM DAMAGES**[1]

On May 15, 2014, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, et seq. (the "Vaccine Act" or "the Program"),[2] alleging that she suffered from Complex Regional Pain Syndrome ("CRPS") caused by her October 4, 2011 influenza ("flu") vaccination. Amended ("Am.") Petition at 1-2 (ECF No. 29). Respondent conceded that petitioner is entitled to compensation, and a Ruling on Entitlement issued on August 7, 2018. Ruling on Entitlement dated Aug. 7, 2018 (ECF No. 116).

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

Because the parties had been unsuccessful in resolving pain and suffering damages, a damages hearing was held on August 9 and 10, 2018. A ruling on pain and suffering issued on January 22, 2019. There, the undersigned awarded petitioner $200,000.00 for actual pain and suffering and "$10,000.00 per year reduced to net present value, for the rest of her life expectancy, for future pain and suffering." Ruling dated Jan. 22, 2019, at 14 (ECF No. 145). The undersigned also issued a ruling regarding the set-off of petitioner's settlement with the vaccine administrator on March 6, 2019. Ruling dated Mar. 6, 2019 (ECF No. 149).

Although the parties are working together to resolve the remaining damages questions in light of the undersigned's rulings, they continue to disagree on a number of matters. At issue here is whether the undersigned can grant petitioner's motion for an interim damages award for actual and future pain and suffering and past unreimbursable medical expenses. The undersigned finds that (1) the Vaccine Act permits an award of interim damages, (2) this case presents an appropriate circumstance for such an award, and (3) petitioner is entitled to receive an interim damages award for actual pain and suffering and past unreimbursable medical expenses.

Therefore, the undersigned finds an award of petitioner's actual pain and suffering, in the amount of $200,000.00, and past unreimbursable medical expenses, in the amount of $4,494.76, for a total interim damages award of $204,494.76 appropriate in this case. Pursuant to the Ruling on Set-off, the undersigned finds petitioner's interim damages award subject to offset in the amount of $51,750.00, making petitioner's total interim damages award $152,744.76.

## I. PROCEDURAL HISTORY

Most of the procedural history of this case was set forth in the Ruling on Pain and Suffering and is incorporated herein by reference. See Ruling dated Jan. 22, 2019, at 2-3 (ECF No. 145). A brief summary of the relevant procedural history after the undersigned's Ruling on Pain and Suffering is set forth here.

On April 5, 2019, petitioner filed a sworn declaration, indicating that she is claiming only expenses accumulated following her settlement with Olmsted County, and filed her complete breakdown of her out-of-pocket expenses. Petitioner's Exhibits ("Pet. Exs.") 66-67. On April 19, 2019, respondent filed a response to petitioner's request for past out-of-pocket expenses, detailing respondent's objections to each line of out-of-pocket expenses and requesting additional evidence. (ECF No. 155). Additionally, on April 19, 2019, the parties filed a joint status report, listing the elements of damages that remained unresolved. Joint Status Rept., filed Apr. 19, 2019 (ECF No. 156).

On May 3, 2019, respondent filed his updated life care plan. Respondent's Exhibit ("Resp. Ex.") I. With the updated life care plan, respondent filed a status report, summarizing the remaining areas of damages and indicating where the parties are in agreement. Resp. Status Rept., filed May 3, 2019 (ECF No. 158).

The undersigned directed the parties to file additional documentation to assist her with resolving the parties' disagreements as to damages. Order dated June 5, 2019 (ECF No. 159). In response, respondent filed a report on the present value of the Court's future pain and suffering

award from his economist, Dr. Patrick Kennedy, on June 12, 2019, and petitioner filed a report from her economist, Dr. Mark McNulty, on June 14, 2019. Resp. Ex. J; Pet. Ex. 69. Petitioner also filed a memorandum on the pain and suffering damages calculation on June 14, 2019, which respondent filed a response to on July 19, 2019. Petitioner's Memorandum on Pain and Suffering Damages Calculation ("Pet. Pain & Suffering Mem."), filed June 14, 2019 (ECF No. 163); Resp. Status Rept., filed July 19, 2019 (ECF No. 167).

On July 5, 2019, petitioner filed a revised list of out-of-pocket expenses with supporting documentation. Pet. Ex. 70. On October 4, 2019, respondent filed his analysis of petitioner's revised out-of-pocket expenses and requested additional evidence. Resp. Ex. K. In response, petitioner filed documentation of her outstanding medical payment balances on November 6, 2019. Pet. Ex. 72. On November 25, 2019, respondent filed an updated analysis in light of petitioner's documentation regarding her outstanding balances. Resp. Ex. L.

On December 10, 2019, the undersigned held a status conference during which she addressed the issue of net present value of the future pain and suffering award. Order dated Dec. 11, 2019 (ECF No. 188). She explained that she finds petitioner's approach more persuasive, which allots $10,000 per year to petitioner until the cap is reached. Id. at 1. The parties indicated that they reached an agreement as to the amount for past unreimbursable expenses. Id. Even though petitioner previously withdrew her loss of earnings claim in August 2018, petitioner's counsel reported during this status conference that petitioner plans to now seek lost wages.[3] Id.; Pet. Status Rept., filed Aug. 8, 2018 (ECF No. 115). Additionally, despite the parties' agreement that there are additional damages issues to be determined, petitioner's counsel informed the Court and respondent's counsel of his intent to file a motion for an interim award of damages.

On December 19, 2019, petitioner filed a motion for an interim damages award, requesting an interim damages award for past and future pain and suffering and past unreimbursable medical expenses. Petitioner's Motion for an Interim Damages Award ("Pet. Mot."), filed Dec. 19, 2019, at 2 (ECF No. 189). On February 26, 2020, respondent filed his response and objections to petitioner's motion for an interim damages award, and petitioner filed a reply on March 4, 2020. Respondent's Response and Objections to Pet. Mot. ("Resp. Response"), filed Feb. 26, 2020 (ECF No. 200); Petitioner's Reply to Resp. Response ("Pet. Reply"), filed Mar. 4, 2020 (ECF No. 201).

This case is now ripe for a decision on interim damages.

## II. SUMMARY OF RELEVANT EVIDENCE

Most of the relevant history of this case, including the summary of medical records and petitioner's testimony at the damages hearing, was set forth in the Ruling on Pain and Suffering and is incorporated herein by reference. See Ruling dated Jan. 22, 2019, at 3-9 (ECF No. 145). A brief summary of the relevant evidence relating to this Decision is set forth here.

---

[3] Petitioner's claim for lost wages remains unresolved and will not be addressed in this Decision.

Before petitioner's vaccine injury, she was very independent: she raised seven foster children as a single mother; she taught her foster children how to fish, jet ski, and ride a motorcycle; she was a farmer and milked ninety cows twice a day; she drove tractors, bailed hay, gardened, did yard work, mowed her lawn, and took care of her own snow removal; and she made jewelry and worked as a seamstress. Transcript ("Tr.") 87-89. For her job, petitioner is required to travel. Tr. 93. As a result of her vaccine injury to her arm, driving is very difficult with only one hand on the wheel, especially when it is icy, snowing, or raining. Tr. 93, 95. Petitioner can no longer do her own yard work and housework, and her daughter "pretty much helps [petitioner] with everything." Tr. 96-97.

Over time, petitioner's condition has continued to worsen. Petitioner's chronic pain led to mood changes and she described being in a "vicious circle of pain." Tr. 28-30. During the hearing, she testified that she continued to have a "slow steady increase of . . . pain," and in her left arm she continued to have "sharp pains, dull pains, pressure, [and] hand pain." Tr. 85. Since her injury, she has tried many procedures, medications, and therapies to address her chronic pain, but none have worked. See Tr. 47-50, 60-78. In 2016, petitioner's Primary Care Physician ("PCP"), Nurse Practitioner Jeremy Waldo, APRN, CNP, RN summarized petitioner diagnosis and clinical course, and stated that "[g]iven the long standing nature of the [petitioner's] pain and an exhaustion of treatment options, I do not anticipate a cure. Rather continued progressive pain, unfortunately, appears to be more likely." Pet. Ex. 22 at 1.

On September 3, 2019, petitioner filed a memorandum regarding the impact her vaccine injury has had on her ability to work. Petitioner's Memorandum on Work Life ("Pet. Work Life Mem."), filed Sept. 3, 2019 (ECF No. 172). Petitioner cites to her testimony, as well as the testimony of Liz Kattman and Dr. Kinsbourne, to illustrate how her injury has made it difficult to "take care of [her]self, do [her] job, [and] get through [her] day," and thus, she must stop working. Id. at 1-11 (quoting Tr. 28).

Along with the memorandum, petitioner filed a sworn declaration, in which she explained how she plans to stop working and apply for disability. Pet. Ex. 71. Petitioner explained that "[t]he only reason that [she] ha[s] not already stopped working is that [she] [is] the only one who pays [her] bills," but "[she] know[s] that [she] ha[s] to stop working." Id. at ¶¶ 4-5. Her condition continues to worsen, which in turn decreases her ability to do her job. Id. at ¶ 5.

In a letter dated November 13, 2019, petitioner's physician, Dr. Keith Bengtson, recommended petitioner stop working and opined that she is disabled. Pet. Ex. 74. Dr. Bengtson explains that due to her ongoing pain and problems sleeping, "[petitioner] has experienced progressive problems with her memory and decreased performance at work" and "[s]he is beginning to make mistakes at work which can have dire consequences to her clients." Id. at 1. He adds that petitioner has difficulty "driving to and from work, especially in the wintertime, because she is driving one-handed and her arms [] fatigue easily because of ongoing weakness." Id. Petitioner cannot take "neuro-modulatory pain medications because the side effects of these medications will compound her cognitive difficulties." Id. Thus, Dr. Bengtson concludes her limitations, restrictions, and difficulties make petitioner disabled from her given profession. Id.

4

On February 10, 2020, in an unopposed motion for an extension of time to file petitioner's completed disability application and additional letter from her primary care provider, petitioner noted her difficulty in retrieving the requested documentation. Pet. Mot. for Extension of Time, filed Feb. 10, 2020 (ECF No. 197). Specifically, petitioner stated that due to her unpaid medical balances, she has not been able to make an appointment to get a second opinion letter from a medical provider, and such letter is required for petitioner to file for disability under her employer's policy. Id. at 1. Petitioner indicated that she is attempting to work around this problem, but noted it is complicated and she may ultimately be unsuccessful. Id. Petitioner explained that "receipt of an interim award from this Program would solve this and other problems" and "would speedup the resolution of this claim and would benefit the [p]etitioner immensely." Id.

In a sworn declaration dated March 3, 2020, petitioner maintains that "[she] [is] in the process of applying for disability through [her] employer and gathering the necessary supporting documentation for [her] disability claim." Pet. Ex. 76 at ¶ 2. Petitioner explains "[her] pain has increased over this past winter," making work more difficult. Id. at ¶ 3. Specifically, she mentions having problems writing and typing, and due to the cold weather, which "has become intolerable," it is extremely difficult to travel for work. Id. at ¶ 4. Petitioner also reports that since she informed her employer about her intent to apply for disability, her workload has increased without additional assistance and stricter guidelines have been put in place, making her job less flexible. Id. at ¶ 5. Additionally, petitioner indicates that she has presented to the emergency room seeking relief from her pain on numerous occasions. Id. at ¶ 3. "[D]ue to [her] extreme medical debt," she is "unable to see a doctor on a regular basis." Id. In fact, "[a]ll of [her] providers have sent [her] balances to collections." Id.

On March 11, 2020, petitioner filed a status report indicating that she planned to submit her disability application on March 12, 2020. Pet. Status Rept., filed Mar. 11, 2020 (ECF No. 203). On the following day, petitioner filed her Public Employees Retirement Association of Minnesota ("PERA") disability application. Pet. Ex. 84. Even though petitioner recently filed her PERA disability application, it is unclear when petitioner will begin to receive disability payments, if disability is granted.

### III.   STATEMENT OF THE ISSUES

The first issue is whether the statute permits an award of interim damages. Assuming that the statute allows a special master to award interim damages, the second issue is whether this case presents an appropriate circumstance for such an award. The third issue is what type(s) and amount of damages petitioner may receive on an interim basis. The undersigned discusses each of these issues in turn.

### IV.   SUMMARY OF PARTIES' ARGUMENTS

#### A. Petitioner's Contentions

Petitioner asserts that the Vaccine Act authorizes the payment of interim damages. Pet. Mot. at 2. Petitioner cites to Lerwick v. Secretary of Health & Human Services, where Special

5

Master Moran highlighted several Federal Circuit rulings which have permitted multiple damages awards in Program cases, arguing that these cases support an award of interim damages in this case. Id. (citing Lerwick v. Sec'y of Health & Human Servs., No. 06-847V, 2014 WL 1897656, at *3-8 (Fed. Cl. Spec. Mstr. Apr. 16, 2014); Order, Tembenis v. Sec'y of Health & Human Servs., No. 2013-5029 (Fed. Cir. May 16, 2013); Order, Heinzelman v. Sec'y of Health & Human Servs., No. 2011-5127 (Fed. Cir. June 13, 2012); Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010); Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008)). Petitioner noted that Special Master Moran in Lerwick found that the Federal Circuit in Avera and Shaw "stated that special masters have the authority to award attorneys' fees and costs on an interim basis. In two other cases, Heinzelman and Tembenis, the Federal Circuit endorsed multiple decisions awarding compensation, albeit in non-precedential orders." Id. (quoting Lerwick, 2014 WL 1897656, at *4). Thus, "since interim awards of attorney's fees are sanctioned under Avera and Shaw and are now commonplace in the Vaccine Program, there is no reason why an interim award of uncontested damages should not be legally authorized." Id.

In further support of petitioner's argument that the Vaccine Act authorizes the payment of interim damages, petitioner cites to a decision issued by the undersigned in Day v. Secretary of Health & Human Services, where petitioner was awarded an interim damages award of past pain and suffering. Pet. Mot. at 3 (citing Day v. Sec'y of Health & Human Servs., No. 12-630V, 2016 WL 3457749 (Fed. Cl. Spec. Mstr. May 31, 2016), mot. for rev. denied, 129 Fed. Cl. 450 (2016)). Petitioner also cites a more recent decision where Senior Judge Smith upheld an interim damages award. Id. (citing Fairchild v. Sec'y of Health & Human Servs., 138 Fed. Cl. 29 (2018)).

Petitioner explains that her current condition makes it extremely difficult and dangerous to continue working, but she cannot afford to stop working. Pet. Mot. at 2. Although the parties are still working out the details for several categories of damages, petitioner states past and future pain and suffering damages and past unreimbursable medical expenses have been finalized. Id. at 1-2. Specifically, petitioner notes that the undersigned has already determined the amount of damages she plans to award for past and future pain and suffering and the parties have agreed that petitioner's past unreimbursable medical expenses are $4,494.76. Id. at 3. Thus, petitioner requests this Court grant petitioner's motion for an interim award for past and future pain and suffering and past unreimbursable medical expenses so that petitioner can stop working pursuant to her doctor's orders. Id. at 2.

Petitioner argues she has been suffering from "chronic, progressive pain" for over eight years, and although respondent conceded entitlement in January 2015, damages are still not resolved and "the end is not in sight." Pet. Reply at 1-2. Even though petitioner received a settlement from Olmsted County in September 2015, during the pendency of this case, she states "[t]hat money is long gone." Id. at 2. Thus, because "[p]etitioner desperately needs these funds to be released" and the amounts for past and future pain and suffering and past unreimbursable expenses have been determined, an interim damages award is appropriate. Id. at 2.

6

### B. Respondent's Contentions

Respondent argues that an award of interim damages is improper because (1) "there is no statutory basis in the Vaccine Act to award interim damages;" (2) "interim damages awards potentially open the door to an expansion of the right to bring lawsuits against vaccine administrators or manufacturers, undermining one of the key purposes of the Vaccine Act;" and (3) "petitioner has not demonstrated any undue hardship that would warrant an interim damages award." Resp. Response at 7.

First, respondent contends that the language of the Vaccine Act does not permit special masters to award interim damages. Resp. Response at 4. Respondent argues that the decisions petitioner relied on in her motion are nonprecedential and not binding. Id. at 4 n.5.

Respondent next argues that "the fact that interim attorneys' fee decisions are routinely authorized by the Program is not germane to the question of whether interim injury compensation is similarly allowed" because "unlike injury compensation payments, 'issues of attorneys' fees and costs are collateral in nature.'" Resp. Response at 5 (quoting Grice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 119 (1996)).

Third, respondent argues that potential procedural problems will arise if an interim damages decision is issued. Resp. Response at 6. Specifically, respondent contends that if an interim damages award is granted, there will be multiple judgments requiring multiple elections, and "a petitioner who accepts one judgment is not clearly bound to accept a separate judgment." Id. Thus, if petitioner were to accept some damages judgments but reject others in favor of bringing a civil lawsuit, then "one of the overriding purposes of the Vaccine Act—to shield vaccine manufacturers and administrators from litigation and liability awards—would be negated." Id. at 6-7.

Even if the language of the Vaccine Act permits an award of interim damages, respondent argues petitioner has not made a showing "that the extraordinary step of issuing an interim award is justified." Resp. Response at 5. Respondent contends petitioner failed to provide evidence supporting her claim that an interim damages award would allow her to stop working. Id.

Furthermore, respondent maintains that "[p]etitioner d[id] not provide any reason for an immediate need for an interim award, or identify any extreme family or financial hardship" to justify such an award. Resp. Response at 5. In support, respondent points out that (1) "petitioner has primary health insurance coverage through her employer;" (2) there is no indication, unlike the petitioners in Lerwick and Day, that petitioner's "critical needs are not being met or that she will lose access to necessary funds to care for her vaccine-related injury;" and (3) petitioner, unlike the petitioners in Lerwick, Day, and Fairchild, "received a $58,270.07 settlement from Olmsted County, the vaccine administrator, and its insurance providers during the pendency of this case." Id. at 5-6. Respondent also points out that "[p]etitioner has continued to work since her injury, and has no lost income," and respondent argues "petitioner may not experience a loss of earnings even if she were to stop working before her full life expectancy." Id. at 4.

7

"Aside from the fact that the Vaccine Act does not permit an award of interim damages," respondent concludes that "petitioner should not be permitted to prolong and protract the resolution of damages by failing to produce documentation necessary to resolve the same, and then at the same time, request that the Court award partial damages on the grounds that two elements of damages are 'settled.'"[4] Resp. Response at 4. Respondent explains that "[p]etitioner has been asked repeatedly to produce documentation of her alleged inability to work due to CRPS as well as to produce complete documentation relevant to the calculation of lost future earnings," but "has not done so." Id.

## V. ANALYSIS

### A. The Statute Permits an Award of Interim Damages

In Lerwick, the special master awarded interim damages to petitioner for past pain and suffering and past unreimbursed medical expenses. 2014 WL 1897656, at *11. Despite the respondent's argument that "a" decision should be interpreted to mean "one" decision, the special master found that the rules of statutory construction permit interpretive flexibility. Id. at *3.[5] The undersigned agrees with this analysis and finds that the plain language of the Vaccine Act does not prohibit special masters from issuing multiple decisions on compensation. The undersigned further notes that this interpretation of the statute comports with the overall intent of Congress,[6] who instructed that the purpose of the Vaccine Act is to compensate vaccine-injured individuals "quickly, easily, and with certainty and generosity." H.R. Rep. 99-908, at 3 (1986).

The question of whether the Vaccine Act authorizes multiple decisions on compensation has also been addressed by the Federal Circuit. In Avera, the Federal Circuit stated that special masters have the authority to issue multiple decisions awarding attorneys' fees and costs. 515

---

[4] Respondent does acknowledge that the parties agreed that petitioner's past unreimbursable medical expenses are $4,494.76. Resp. Response at 2.

[5] The special master explained, "[i]n a statute, the use of an indefinite article ('a' or 'an') can mean 'one or more.' In contrast, the use of the definite article ('the') usually suggests a single item." Lerwick, 2014 WL 1897656, at *3 (citing Colorado v. Sunoco, Inc., 337 F.3d 1233, 1241 (10th Cir. 2003). The special master added that "[t]he Federal Circuit has used the same guidelines in construing patents" and "[t]he Court of Federal Claims has also distinguished indefinite articles from the definite article when interpreting a contract provision." Id. (citing Sandisc Corp. v. Kingston Tech. Co., Inc., 695 F.3d 1348, 1360 (Fed. Cir. 2012); Boeing Co. v. United States, 75 Fed. Cl. 34, 43 (2007) ("If more than one such official were contemplated, the indefinite articles 'an' or 'a' should have been used.")).

[6] It is well established that principles of statutory construction require a statute to be interpreted in a way consistent with Congress' intent. See Saunders v. Sec'y of Health & Human Servs., 25 F.3d 1031, 1036 (Fed. Cir. 1994); Doyon, Ltd. v. United States, 214 F.3d 1309, 1314 ("The objective when interpreting statutes is to give effect to the intent of Congress. . . . [T]o fully understand the meaning of a statute, we look 'not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.'").

F.3d at 1352.  Moreover, the Federal Circuit rejected the respondent's arguments against interim damages in both Heinzelman and Tembenis.

In Heinzelman, the Federal Circuit granted petitioner's motion for interim damages and ordered the Court of Federal Claims to issue an interim damages award to petitioner.  Order at 2, Heinzelman, No. 2011-5127 (Fed. Cir. June 13, 2012).  In Tembenis, the Federal Circuit rejected respondent's concerns that interim damages would compromise the structure of the Program by causing inconsistent elections and thus result in claims outside of the Program.  Order at 5-6, Tembenis, No. 2013-5029 (Fed. Cir. May 16, 2013).  With regard to the respondent's arguments about the potential for inconsistent elections of judgments, the Federal Circuit found that a judicial officer could hold that the election to accept a judgment awarding interim compensation implied the acceptance of a later judgment awarding final compensation, thus preventing the problem of inconsistent elections.  Id. at 5-6; accord Lerwick, 2014 WL 1897656, at *7.

The Court of Federal Claims, like the Federal Circuit, rejected the respondent's arguments against awarding interim damages.  See Fairchild, 138 Fed. Cl. at 31-34 (denying respondent's motion for review and finding the special master had authority to order an interim damages award); Day, 129 Fed. Cl. at 453-54 (denying respondent's motion for review of the undersigned's award of interim damages for past pain and suffering and determining that interim damages were permissible under the Vaccine Act).

While the undersigned is not bound by these nonprecedential rulings, she finds their reasoning to be sound, in accordance with the Vaccine Act, and therefore highly persuasive.  For these reasons, the undersigned finds that special masters possess the legal authority to award compensation on an interim basis.

### B. An Award of Interim Damages Is Appropriate in This Case

Now that the undersigned has determined that special masters possess the discretionary authority to award interim damages, she must determine whether interim damages are appropriate under the facts and circumstances of this case.

The basis for an award of interim damages is the August 7, 2018 Ruling on Entitlement, which found that petitioner established that the flu vaccine administered on October 4, 2011 caused her to develop CRPS.  Ruling on Entitlement dated Aug. 7, 2018, at 1-2 (ECF No. 116).  It has been almost nine years since the onset of petitioner's injury and five years since respondent conceded entitlement.  See Respondent's Amended Rule 4(c) Report at 2-3 (ECF No. 33).  As respondent noted, the parties are still in the process of determining certain items of damages.  Resp. Response at 2.  The final resolution of these damages could take several more months, as petitioner has been unable to attain the required documentation to prove some of these damages.[7]  See Pet. Mot. at 2-3.

---

[7] After filing her motion for interim damages, petitioner filed some of the required documentation.  See Pet. Exs. 76-84.  At the time of this Decision, documentation remains outstanding.

9

While her future damages award remains pending, petitioner has an immediate need for an interim damages award. Due to financial hardship, petitioner has been unable to get a second opinion letter from a medical provider, which is required for petitioner to file for disability under her employer's policy and required for resolution of certain items of damages still in dispute. Pet. Mot. at 1. Petitioner currently owes money to several medical providers, and does not maintain a relationship with a PCP because of such lack of funds. Pet. Reply at 2. Furthermore, she cannot afford to stop working, even though her current condition makes it extremely difficult to continue and her doctor has declared her disabled. Pet. Mot. at 2. Although petitioner has completed her PERA disability application, it is unknown when she will receive payments under the policy, assuming PERA grants petitioner's disability application. An interim damages award will assist petitioner in obtaining the required documentation for the remaining damages issues to be resolved, and will allow petitioner to stop working.

Respondent argues this case is different from Lerwick, Day, and Fairchild because petitioner received a settlement from the vaccine administrator during the pendency of this case. See Resp. Response at 5-6. However, petitioner received this settlement in 2015—almost five years ago—and her damages in the above-mentioned matter are still unresolved. As petitioner stated, the money she received from that settlement is gone. Pet. Reply at 2. The undersigned already addressed this issue in a ruling regarding the set-off of petitioner's settlement with the vaccine administrator on March 6, 2019. See Ruling dated Mar. 6, 2019 (ECF No. 149). The undersigned finds that based on the unique facts and circumstances here, the petitioner's 2015 settlement award does not preclude her from receiving an interim damages award at this time.

Respondent also argues that "[t]here is no indication that [petitioner's] critical needs are not being met or that she will lose access to necessary funds to care for her vaccine-related injury, as was the case in Lerwick [and] Day." Resp. Response at 5. The undersigned does not find this argument persuasive. As previously mentioned, petitioner's medical debts are so past due that she is unable to maintain a relationship with a PCP. Nor is petitioner able to stop working and focus on her health because of a lack of funds. The undersigned finds that petitioner has made a persuasive case that there is extreme hardship that merits an interim damages award. See Day, 129 Fed. Cl. at 451.

Like the petitioner in Lerwick, the petitioner here has "suffer[ed] significant medical problems." Lerwick, 2014 WL 1897656, at *12. This interim award will alleviate some of petitioner's difficulties over the past nine years since her injury and over five years since respondent conceded entitlement. See id.

This decision does not contemplate that interim damages would be routinely or even frequently awarded, but in this case, petitioner has made a persuasive case that there is extreme hardship and that accordingly, the purpose of the Vaccine Act is better fulfilled by making the interim award. For all of the reasons above, the undersigned finds that an award of interim damages is appropriate in this case.

### C. Petitioner May Receive Interim Damages for Past Unreimbursable Medical Expenses

Petitioner's past unreimbursable medical expenses are uncontested. Both parties agree petitioner's past unreimbursable medical expenses equals $4,494.76. Pet. Mot. at 3; Resp. Response at 2. Thus, the undersigned finds petitioner is entitled to receive an award of $4,494.76 for past unreimbursable medical expenses in an interim damages award.

### D. Petitioner May Receive Interim Damages for Only Actual Pain and Suffering

"[I]n calculating the amount of compensation for pain and suffering and emotional distress under the Vaccine Act, the statutory cap . . . must be applied when determining the amount of "compensation" and the discount provision . . . must then be applied to the 'compensation' amount to determine the immediate lump sum that is to be paid." Youngblood v. Sec'y of Health & Human Servs., 32 F.3d 552, 555 (Fed. Cir. 1994). Due to the inherent unpredictability of these factors, a trial court should generally not be reversed "if it adopts a rate between one and three percent and explains its choice." Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 549 (1983).

The undersigned issued a ruling on pain and suffering on January 22, 2019, awarding petitioner $200,000.00 for actual pain and suffering. Ruling dated Jan. 22, 2019, at 14 (ECF No. 145). Thus, the undersigned finds petitioner is entitled to receive an interim damages award of $200,000.00 for actual pain and suffering.

As to future pain and suffering, the undersigned finds an interim damages award representing this item of damages inappropriate at this time. Although the undersigned previously addressed the net present value for future pain and suffering and found petitioner's approach most persuasive, the net present value for future pain and suffering is nonetheless in dispute. Consistent with previous decisions in this Court and in the Federal Circuit, the undersigned finds an award of only uncontested items of damages—here, past unreimbursable medical expenses and actual pain and suffering—to be appropriate in this interim award.

In Tembenis, the Federal Circuit in a nonprecedential order, found petitioners were permitted to receive undisputed compensation while the disputed items of damages were on appeal. Likewise, in a nonprecedential order in Heinzelman, the Federal Circuit awarded petitioner damages in an amount less the amount at dispute. In Fairchild, the special master awarded petitioner an interim damages award of undisputed damages, which Senior Judge Smith held he had authority to do so. Thus, the undersigned finds an award of interim undisputed damages appropriate.

Further, in Lerwick, respondent raised a concern regarding "future damages," which would arise only if the petitioner died. Lerwick, 2014 WL 1897656, at *11. In response, the special master awarded petitioner only those damages that were not subject to change—specifically, past unreimbursable medical expenses and emotional distress. Id. Like the special master in Lerwick, who relied on Tembenis, the undersigned finds an interim award implicating future pain and suffering could cause complications.

## VI.    APPLICATION OF SET-OFF

On March 6, 2019, the undersigned issued a ruling regarding the set-off of petitioner's settlement with the vaccine administrator. Ruling dated Mar. 6, 2019 (ECF No. 149). During the pendency of her vaccine case in this Court, petitioner executed a "Release of All Claims" with the employer of the vaccine administrator and its insurer in consideration of $58,270.07. Id. at 2-3 (citing Pet. Ex. 19 at 4). In her ruling, the undersigned found the Vaccine Act is a secondary payer as to the insurance policy and that petitioner's award of compensation is subject to a set-off. Id. at 2. The undersigned explained that if petitioner demonstrated that she was not seeking expenses previously reimbursed by the vaccine administrator in the amount of $6,520.07 in her present Vaccine Act case, then her Vaccine Program award would be offset by only $51,750.00. Id. at 6. Thereafter, petitioner filed a sworn declaration on April 5, 2019, stating that she is claiming only those expenses accumulated following her settlement with Olmsted County. Pet. Ex. 66. Therefore, the undersigned finds petitioner's interim damages award shall be offset by $51,750.00.

## VII.    CONCLUSION

The undersigned finds that petitioner is entitled to an award of interim damages under the unique facts and circumstances of this case. An award of petitioner's actual pain and suffering and past unreimbursable medical expenses is appropriate in this case, and there is no reason to delay the entry of judgment on these items of damages, especially given petitioner's particularly difficult financial circumstances. The undersigned reserves ruling on the remaining statutory elements of damages for a future date.

**Accordingly, the undersigned awards a lump sum payment of $152,744.76,[8] representing actual pain and suffering and past unreimbursable expenses, less the set-off amount, in the form of a check made payable to petitioner, Tammy Schettl.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court **SHALL ENTER JUDGMENT** in accordance herewith.[9]

**IT IS SO ORDERED.**

                                                                                         **s/ Nora Beth Dorsey**
                                                                                         Nora Beth Dorsey
                                                                                         Special Master

---

[8] $152,744.76 equals actual pain and suffering ($200,000.00) plus past unreimbursable medical expenses ($4,494.76), less the amount representing petitioner's set-off ($51,750.00).

[9] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.